L. McCully *v.* R. H. Stanley, A. S. Cleghorn and R. B. Neville.

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1868.

*Allen, Ch. J., Davis, J.*

## L. McCULLY *vs.* R. H. STANLEY, A. S. CLEGHORN AND R. B. NEVILLE.

In an action brought against the assignees of a bankrupt who sold his right, title and interest in a house to be removed in three months, the house being on land owned in common between the plaintiff and the bankrupt; HELD, that no title in the house was guaranteed to the vendee; and the plaintiff was properly non-suited.

Justice Davis delivered the opinion of the Court.

This matter comes before the full Court on a bill of exceptions filed by the plaintiff's counsel to a ruling made by the Chief Justice, while sitting at *nisi prius*, by which the Court granted a non-suit on motion of defendants' counsel, at the last January term of this Court.

L. McCully *v.* R. H. Stanley, A. S. Cleghorn and R. B. Neville.

The action is for damages resulting to plaintiff for injury done by the defendants to the property of said plaintiff, he being the owner of a certain tract of land situated in Kona, Hawaii. Said action rests principally upon an agreement entered into by the plaintiff with Wm. F. Roy, on the first day of April, 1865, by which plaintiff sold to Roy one undivided half of his land at Kona for $600, and in consideration also of certain covenants entered into by said Roy, which, in substance, are as follows: that neither of the parties, during the life-time of the other, shall sell, lease or alienate his interest without the consent and joinder of the other; that all future acquisitions of parcels of land shall be made together, each party paying one half the price, and such additions being subject to all the covenants in the agreement contained; that upon the death of either, the survivor, and the legal representative of the deceased party, shall, within twelve months, offer bids to each other for the purchase of the other half interest, and the party making the highest bid shall have the privilege of purchasing the other half interest; said Roy to have the sole management of the estate, to sell all the produce, and after being allowed a reasonable payment for his services, the net result to be equally divided between the parties; said Roy to advance all the money necessary for the cultivation and improvement of said premises, without contribution from the other party, except for the purchase of new land. And said McCully relinquishes for one year from date the whole produce of this estate, without division, and after one year, the net profits to be divided equally, as aforesaid,

The declaration avers that in pursuance of the contract, Roy entered upon the land, and made improvements. Among others, he built upon said land a valuable framed house, of the value of $2,000, which said house was attached to the freehold of said tract of land; but that about the 23d of February, 1867, Roy became bankrupt, and that the

L. McCully *v.* R. H. Stanley, A. S. Cleghorn ánd R. B. Neville.

assignees took possession of said land and the improvements thereon, by their agent, R. B. Neville; and that on or about the 15th day of May, 1867, without notice to this plaintiff, they authorized and ordered the said Neville to sell the aforesaid framed house, and under the order of the assignees unlawfully permitted the purchaser to enter upon the said land and tear said house down and remove the materials, and take and convert them to his own use, and the said Neville and the assignees received from the purchaser the sum of about $250.

The complaint also states that subsequently the interest of Roy in the land was sold by his assignees and purchased by the plaintiff. He is now the sole owner of the land, and of all the improvements thereon, and thereby became entitled to all the improvements which were made by Roy, previous to his bankruptcy. The plaintiff alleges that these acts of the defendants are in contravention of his private rights under the law, and asks the process of this Court to cite, &c.

The defendants merely filed a plea of the general issue, not traversing any particular allegation of the declaration, thereby subjecting the plaintiff to .the necessity of proving his whole case. At the close of plaintiff's proofs, the defendants moved for a non-suit, which, after argument, the Court granted, and the jury were relieved from the consideration of the case.

Let us examine from the record as it comes up to this Court, and upon the argument thereupon here made, whether the Court below erred in granting the motion.

Where defendant rests his case on non-suit, the Court takes all evidence in as true. [Morehead's Practice, p. 662.] It is not necessary to review the law in regard to what may constitute a non-suit; its rules are familiar to every legal practitioner. It is only requisite to ascertain whether the facts apply to them in the present instance.

We may premise that courts do not set aside a non-suit

where the verdict would be contrary to evidence produced. [8 Mass., p. 336.] And we may also say, that it is the duty of the Court to order a non-suit where it appears from the evidence adduced that it would be obliged to instruct the jury that upon the showing, they could bring in no other verdict than one for the defendant.

What was, then, the state of this case, when the motion was made and sustained?

The plaintiff had proved the agreement and its covenants. By Roy he proved his entry upon the land according to agreement, and that he, Roy, built the frame house, worth $1,200; that the house was sold after his bankruptcy; that Neville sold only the right, title and interest of W. F. Roy in the house. The house was built on stones, and could be removed at any time. The house was removed. On cross-examination, witness says he considered the house his before he became bankrupt; brought the materials from California; house was placed on loose stones, so that it could be moved at any time, and anywhere.

By Hall, the carpenter who built the house, the same facts are shown as by the first witness. He also states that he helped to remove the house by Mr. Williamson's authority, who was the vendee; that Neville sold the house as sheriff, and announced at the sale that it must be removed in three months. It was worth $1,500 or $1,800. It is also proved that Neville was agent of the assignees, and sold the house by their order, viz.: the right, title and interest of Roy. It sold for $250. At this point the plaintiff rested, and the motion for a non-suit was made by defendants.

There can be no doubt that it is the duty of assignees to realize with all convenient promptitude the assets of the bankrupt; and from the nature of the trust imposed upon them, there must be some very palpable stretch or abuse of authority to induce the Court to mulct them in damages for their acts, where they have a *prima facie* basis of right on

their side.   Here, by the inventory, the house is exhibited as a chattel belonging to Roy's estate—they had the order of the Court to sell the house.   *Prima facie,* it would have been negligence had the assignees not obeyed.   The amount of Roy's indebtedness was large as compared with his assets. And the question, as now before us, upon which the · correctness or error of allowing the non-suit must be decided, is whether it was the duty of the Court to have submitted the case to the jury, as it stood presented when the plaintiff closed.   If it was, the non-suit should be set aside.   Suppose, for example, that the Court had overruled the motion, and allowed the case to go to the jury : under what instructions do they receive it ?   That the assignees, by their manner of sale have exceeded their authority, and it remained for the jury to assess the damages.   Such an instruction from the Court would have assumed the whole of the plaintiff's case.

Again, suppose the Court should have left to the jury the determination of the question whether the assignees had exceeded their authority or not—this would have been to have assigned to the jury the decision of the legal question, what the duties, and the mode of their exercise, of assignees in law are, a matter of jurisprudence within the province of the Court to decide, and not the jury.

And again, suppose the Court had instructed the jury, that according to the well established practice of doing their business, the assignees, knowing that the bankrupt had an important undivided interest in the chattel, they had a right to sell whatever right, title and interest Roy had; then what? Why the Court would have inflicted upon itself and the jury an unnecessary labor, by which the propriety of granting the non-suit becomes apparent.   So that instead of two, there would have been three horns to the dilemma.

So far as the sale of only the right, title and interest of Roy in the house was concerned, it was not material whether the house was moveable or immoveable.   The case might

have been different had the assignees sold a building in which Roy never had the slightest shadow of interest. But there was proof before the assignees that Roy did have a very important ownership in it, of some sort. What the extent and nature of the interest was, the assignees did not pretend to define, or if they had, they might then have rendered themselves liable—but they did not. In announcing by their agent Neville, that the house was to be removed within such a time, they gave no guarantee of entire or perfect title in Roy. The purchaser bought at his own risk.

We think it unnecessary to advert to what has been said about the right of one joint tenant or tenant in common against the other, when bankruptcy has supervened against either of them. It is a fundamental rule of the law of bankruptcy that such tenancy is severed when that takes place, or otherwise the entire property of such a party might be forever locked up from his creditors. We are aware that plaintiff's counsel argued with force that the assignees exceeded their authority by selling the bankrupt's interest in the house as separated from the land, or in suffering the house to be removed from the land. At first, one member of the Court was much struck by this portion of the argument, but upon careful reflection, we do not regard it as the point of exactitude upon which the merits of the non-suit must rest. We are inevitably driven back to consider the question whether under the ordinary practice of selling all the right, title and interest of a party under such circumstances is an excess of authority. *Prima facie*, if not really, Roy had a very perceptible, tangible right to this house, sufficient to base strong convictions, we think, in the minds of his creditors of his rights of property therein. As has been said, his assignees appear to have acted somewhat on such convictions themselves. There is an English statute, 6 Geo. IV., c. 16, which appears to have been passed in reference to actions brought against assignees, and the case of Edge *vs.*

Parker, 8 Barn. & Cress. Rep., p. 697, alludes to it. The defendant, the assignee, entered the plaintiff's premises and seized certain goods, which the jury found were the property of the bankrupt. The writ was not sued out until the 25th of January, 1828, and it was objected for the defendant, that he was protected by the statute under peculiar provisions, as to the period within which the action should be brought. The learned judge presiding at the assizes overruled the objection, but subsequently a rule *nisi* for a non-suit was obtained. Why we cite this case is not its strict applicability to the one at bar, but for the general principle laid down by the Court, which was, that if the assignee does an act directed by the statute, (here the act was done by the order of the Court) even though he do it *erroneously*, he is protected; but if he does the act as the result of his ownership of that which was the bankrupt's property only, he is responsible for it.

Now as we understand this case, the intention of the assignees was to act as nearly within the scope of their authority as possible. If they have exceeded it under the direction of the Court would it be just to hold them responsible, especially as they directed the sale in the usual form in which all such sales are held, and by which all purchasers are placed upon their guard? We think not.

The whole matter might have been well cured could the plaintiff have been the purchaser of the house, but in the declaration he states he had no notice. This may have been so, but our impressions have been that he was more or less cognizant of the action of the assignees in the premises. If the sale had been conducted in the manner contended for by his counsel, a purchaser might have turned up who could in no manner have carried out the terms of the agreement, and the plaintiff been obliged to extinguish such an interest at a considerable advance. But that really has nothing to do with the question. To recapitulate what has been already

said, the issues are all narrowed down to these propositions :

Roy had undoubted rights of property in this house.

By his bankruptcy, these rights, whatever they were, became vested in his assignees.

It became their duty to dispose of them expeditiously, for the benefit of creditors.

They sold merely the bankrupt's right, title and interest.

Williamson bought, as all purchasers do at such sales, at the risk of what the extent of such right and title might eventually turn out to be. *Caveat emptor* is peculiarly appropriate for buyers at such sales. If the title turns out to be perfect, it may be that the timid have been prevented from bidding and the property gone therefore cheaper to the purchaser.

Under these conclusions, we are of the opinion that the non-suit should be confirmed.

Mr. A. J. Lawrence, counsel for plaintiff.

Messrs. W. C. Jones and R. H. Stanley, counsel for defendants.

Honolulu, March 10th, 1868.